**Ned STUCKMAN, Bertha Stuckman, and Gary Stuckman, Appellants (Defendants Below),**

v.

**KOSCIUSKO COUNTY BOARD OF ZONING APPEALS and Papakeechie Protective Association, Appellees (Plaintiffs Below).**

No. 43S03–8704–CV–394.

Supreme Court of Indiana.

April 20, 1987.

Paul D. Refior, Warsaw, for appellants.

Max A. Reed, Michael A. Reed, Warsaw, for appellee Kosciusko County Bd. of Zoning Appeals.

Stephen R. Snyder, Terrill L. Unruh, Syracuse, for appellee Papakeechie Protective Ass'n.

SHEPARD, Chief Justice.

Plaintiffs Kosciusko County Board of Zoning Appeals and Papakeechie Protective Association brought an action for a permanent injunction against Ned, Bertha and Gary Stuckman, asserting that the defendants expanded a pre-existing, nonconforming use of their land as a automobile graveyard in an area zoned for residential use. The trial court found that the Stuckmans had impermissibly modified and expanded the nonconforming use of their land and issued a mandatory injunction. The Court of Appeals held that the Stuckmans had merely intensified a nonconforming use. Accordingly, it reversed the trial court. *Stuckman v. Kosciusko County Bd. of Zoning* (1986), Ind.App., 495 N.E.2d 775.

We grant transfer to address the following issues:

1) Whether relocation of business operations to a new area expanded, extended or changed a pre-existing, nonconforming use;

2) Whether relocation of a portion of business operations to a new area constituted abandonment of a pre-existing, nonconforming use, and

3) Whether photographs were properly admitted as official records.

The Stuckmans have owned lots A–K of Lake Papakeechie Subdivision Number 2 since the 1950's. They have operated an automobile graveyard on portions of the land (lots E–K) since that time. In 1975, the Kosciusko County Zoning Ordinance took effect, and the Stuckmans' land was zoned residential. However, the existing automobile graveyard constituted a lawful, nonconforming use, and the Stuckmans continued its operation.

In 1981 and 1982, the Stuckmans cleared brush and foliage from the northern portion of their property (lots A–D) and began the organized stacking of vehicles in that area. Complaints by area citizens led to the Board's investigation and the subsequent instigation of these proceedings.

### I. Expansion, Extension or Change of Nonconforming Use

■ Prohibition of the continuation of an existing lawful use is unconstitutional as a taking of property without due process of law and as an unreasonable exercise of police power. *Ailes v. Decatur County Area Planning Comm'n* (1983), Ind., 448 N.E.2d 1057, *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). The Kosciusko County Zoning Ordinance accordingly permitted the continuation of a nonconforming use but provided that such a use "may not be extended, expanded or changed unless to a conforming use, except as permitted by the Board of Zoning Appeals." Kosciusko County Zoning Ordinance § 3.61.

The plaintiffs contended that the Stuckmans had expanded their automobile graveyard business from lots E–K, where the business had existed prior to the enactment of the zoning ordinance, to the cleared lots A–D, where no automobile graveyard had previously existed. Thus, the plaintiffs contend, the Stuckmans expanded a nonconforming use into a new area zoned residential without the permission of the Board. The Stuckmans claim that the automobile graveyard had operated on the whole tract, including lots A–D, and that this prior use constitutes a pre-existing nonconforming use which is exempted from the residential zoning requirement.

The trial court rejected both plaintiffs' assertion that an automobile graveyard *never* had existed on lots A–D and defendants' assertion that a graveyard of the

current magnitude had existed on lots A–D from the beginning of their ownership. The photographic evidence showed that defendants have centered their business on lots E–K but that random vehicles were sometimes left on lots A–D. The trial court ruled that clearing the northern lots and subsequently increasing business activity on them illegally modified and expanded the automobile graveyard.

The Court of Appeals addressed the question this way: "whether the intensification of a nonconforming business use within the same area constitutes an impermissible extension, expansion or change." *Stuckman*, 495 N.E.2d at 777. Surveying authority from several jurisdictions, the Court noted that prohibitions against extension or expansion generally concern the area of use and that an increase in business volume generally is not an impermissible change. The Court concluded that the intensification of a nonconforming business use within the same area does not constitute an impermissible extension, expansion or change. *Stuckman*, 195 N.E.2d at 777–78.

■ While we agree with the Court of Appeals' statement of the law, we disagree about its application in this case. While the trial court found that a small-scale automobile graveyard existed on the property as a whole, and defense witnesses testified that "cars was all over the place" prior to the enactment of the zoning ordinance, it is the trial court's responsibility to assess the scope of the automobile graveyard on the effective date of the ordinance. *Misner v. Presdorf* (1981), Ind.App., 421 N.E.2d 684, 686.

Photographic evidence clearly showed that in 1965, 1974 and 1981, the focus of the automobile graveyard business was limited to the southeast portion of the property. Until the clearing operation in 1981–82, cars were scattered in an apparently random manner, and the photographs show that one or two cars may have found their way onto lots A–D. However, the concentration of the automobile graveyard activity consistently remained on lots E–K. Later photographs show that the operation of the graveyard has extended far beyond its original northern boundary and is now concentrated on lots A–D. Witnesses testified that the volume of automobiles had increased by seven to ten times their previous numbers; such an increase would almost of necessity require a concomitant increase in the area.

■ The fact that an occasional junk car may have come to rest on lots A–D does not establish a nonconforming use in that area for the type of large-scale, organized salvage operation which now exists on lots A–D. If such were the case, any property which houses a single abandoned vehicle may overnight be developed into a high volume salvage operation without any violation of local zoning ordinances. The Stuckmans have not merely increased the inventory of junk cars on lots A–D; they have moved an existing, operating automobile graveyard from lots E–K to lots A–D. Doing so was a violation of the zoning ordinance.

The trial court also concluded that this modification in the Stuckmans' business operations constituted an impermissible extension or expansion, and entered a mandatory injunction. The order provided that:

> Defendants ... are entitled to continue the operation of an auto graveyard upon the portions of the four lots that it now exists provided that (a) they limit such operation to purchasing not more than 100 vehicles per year, that (b) at no time do they retain more than 80 vehicles on site, that (c) none of the said vehicles shall be visible from Koher Road in that they be behind earthen embankments, and that (d) vehicles not be stacked for storage purposes.

This order appears inconsistent with a finding that a pre-existing nonconforming use was expanded to lots A–D. If a nonconforming use was impermissibly expanded into a new area, the Stuckmans strictly have no right to carry on an automobile graveyard operation of any type on lots A–D. If a nonconforming use previously existed in that area, no impermissible expansion took place and the Stuckmans have the right to use lots A–D as an automobile

graveyard without any limitations. The court instead seems to limit the automobile graveyard operation on lots A–D to the magnitude of the automobile graveyard operation as it existed over the entirety of the property prior to its expansion. This may be explained in part by the fact that the trial court also found that the pre-existing nonconforming use on lots E–K had been abandoned and that lots E–K could no longer be used as an automobile graveyard. Thus, a remedial order which allowed limited operation of the graveyard on lots A–D avoided the complete discontinuation of the Stuckmans' business.

## II. Abandonment

 Plaintiffs additionally argue that by moving the focus of the automobile graveyard to lots A–D, the Stuckmans abandoned a pre-existing nonconforming use of lots E–K. If a nonconforming use ceases for one year, the use thereafter must conform to those uses permitted in the zoning district. Kosciusko County Zoning Ordinance § 3.63. However, mere discontinuation of a use is not sufficient to constitute abandonment of a nonconforming use. Abandonment requires the concurrence of an intent to abandon and a voluntary act or failure to act signifying abandonment. *Dandy Co., Inc. v. City of South Bend* (1980), Ind.App., 401 N.E.2d 1380.

 The trial court found that the nonconforming use on lots E–K was abandoned by disuse. However, photographs which show the locus of the automobile graveyard on lots A–D also show that numerous junk cars remained on lots E–K. There is no evidence which shows that the Stuckmans intended to use solely lots A–D for their business and accordingly removed cars from lots E–K. Rather, the evidence shows that the Stuckmans *expanded* from an operation existing only on lots E–K to an operation that existed on lots A–D and, to a somewhat lesser but continuing extent, on lots E–K. The trial court's order requiring the Stuckmans to remove the remaining junk cars from lots E–K demonstrates that those lots continue to be used

for the storing of junk cars even after the expansion of that use onto lots A–D.

Therefore, a pre-existing nonconforming use existed and continues to exist on lots E–K. The Stuckmans must be allowed to continue this pre-existing use in that area with no limitations as to volume. The nonconforming use was impermissibly expanded to lots A–D, and the nonconforming use of that area must cease.

## III. Admissibility of Photographs

Appellants challenge the admission of certain photographs, copies of photographs and blue line print copies of negatives which depict the Stuckman property through the years. Appellants argue that admission of the photographs was not supported by an adequate foundation and that their admission was therefore reversible error.

 Generally, photographs offered as demonstrative evidence are admissible when it can be shown that they are a true and accurate representation of the scene which they purport to represent. *Broadus v. State* (1986), Ind., 487 N.E.2d 1298. However, photographs offered as substantive evidence may be admissible without such testimony under the "silent witness" theory. *Stark v. State* (1986), Ind., 489 N.E.2d 43. Though the foundational requirements for the admissibility of photographs under this theory are not absolute, a strong showing of the photograph's competency and authenticity must be established. Whether a sufficiently strong foundation has been made is a determination within the discretion of the trial court. *Id.*

 In this case, the county surveyor was not present when the photographs were taken and thus could not testify that they fairly represented the state of the property. These photographs were therefore not demonstrative of the surveyor's testimony. They were offered as substantive evidence of the status of the Stuckmans' land on various dates. In this context, the photographs were "silent witnesses."

However, the photographs were offered as official records of the county surveyor. Official records may be evidenced by a copy attested by the officer having the legal custody of the record. T.R. 44, Ind. Rules of Procedure. This method of certification is an alternative to other methods of authentication. *Thomas v. State* (1983), Ind., 443 N.E.2d 1197. This alternative method of authentication was appropriate in this case.

The primary objectives of the foundational requirements under the silent witness theory are authenticity and competency. These concerns are satisfied by the authentication required of official records. Admissibility under T.R. 44 is "based on the inherent trustworthiness of official records." *Mickens v. State* (1982), Ind., 439 N.E.2d 591, 554. We have held that authentication of an official record satisfies the chain of custody requirement. *Duncan v. State* (1980), Ind., 409 N.E.2d 597. Additionally, Department of Correction documents which contain photographs offered as proof of identification are frequently admitted under the official records rule. *See, Prentice v. State* (1985), Ind., 474 N.E.2d 496; *Mayes v. State* (1984), Ind., 467 N.E.2d 1189; *Thomas*, 443 N.E.2d 1197; *Mickens*, 439 N.E.2d 591.

In this case, the surveyor testified that the photographs were made as part of the regular record keeping required of his office, that the photographs were taken under strict requirements for season, ground cover and visibility, and that the photographs had remained in the custody of the Kosciusko County Surveyor's Office since that time. There is no evidence or suggestion of tampering with the photographs. Thus, the authentication of these photographs as official records also satisfies the foundational concerns underlying the "silent witness" theory. Under these circumstances, a photograph offered as substantive evidence may be authenticated as an official record.

The petition for transfer is granted. The cause is remanded to the trial court, which is directed to vacate the injunctive portions of its order and to issue such orders as will permit continuing use of lots E–K, prohibit the relocation of the business to lots A–D, and effect the restoration of the status quo as it existed before the relocation.

DeBRULER, GIVAN and DICKSON, JJ., concur.

PIVARNIK, J., dissents and would deny transfer.