The **METROPOLITAN DEVELOPMENT COMMISSION OF MARION COUNTY,** Appellant–Plaintiff,

v.

**Kenneth M. GOODMAN, and Carolyn B. Coulam, Appellee–Defendant.**

No. 49A05–9105–CV–161.

Court of Appeals of Indiana, Fifth District.

March 19, 1992.

cree *of the parties* recited that no children were born of the marriage).

Larry F. Whitham, Whitham, McColley & Ross, Indianapolis, for appellant-plaintiff.

Frederick A. Roetter, Kurt F. Pantzer, III, Hendrickson, Travis, Pantzer & Miller, Indianapolis, for appellee-defendant.

RUCKER, Judge.

The Metropolitan Development Commission of Marion County (Commission) appeals the trial court's denial of the Commission's request to enjoin Kenneth M. Goodman and Carolyn B. Coulam (Homeowners) from maintaining rental units in a carriage house on the grounds of Homeowners' dwelling on north Meridian Street in Indianapolis.

The Commission presents three issues for our review which we rephrase as follows: [1]

---

**1.** The Commission as well as Homeowners also raise issues which were not addressed by the trial court. The Commission argues that Homeowners failed to carry their burden of proof concerning the affirmative defense of variance, and Homeowners contend the trial court's judgment can be upheld on the basis of equitable estoppel. The specific findings of fact and conclusions of law made no reference to either variance or equitable estoppel. Therefore, we do not address these issues because we are not at liberty to sustain the judgment on grounds not addressed by the trial court. *City of Hammond v. Conley* (1986), Ind.App., 498 N.E.2d 48,

1) Did the trial court err in determining that Homeowners' apartment use of the carriage house did not violate existing zoning ordinance restrictions?

2) Did the trial court err in determining that the apartment use of the carriage house was legally established before the effective date of the existing zoning ordinance and therefore qualified for the nonconforming use exception to the zoning restrictions?

3) Did the trial court err in determining that Homeowners' nonconforming use of the carriage house was not terminated by abandonment or expansion of the use after the effective date of the existing zoning ordinance?

We affirm in part and reverse in part.

The real estate property which is the subject of this litigation was originally owned and occupied by the noted Indiana author, Booth Tarkington. Situated upon the real estate are two structures: the "main house" and the "carriage house" both of which were first constructed in 1911. The main house has always been maintained as a single family residence. The carriage house originally contained a downstairs garage and stable, and an upstairs set of rooms which were used as servants' quarters.

In 1951 the property was purchased by Helen Willkie and her husband. The Willkies immediately remodeled the carriage house which resulted in the construction of two apartment units; by 1952 the units were being rented to tenants. In the late 1960's or early 1970's there was a fire in the carriage house. The fire damage was not repaired at that time and the carriage house was not used as a rental apartment for approximately 10 to 15 years.

Sometime after the fire, the exact date of which is not clear, the Willkies sold the property to parties whose names do not appear in the record. However, in 1984 the then owners undertook a restoration project of the carriage house in conjunction with preparing the main house for a 1985 Decorator's Home Show. The owners received the required approval to reconstruct the carriage house from the Meridian Street Preservation Commission. The owners also obtained an improvement location permit from the Permit Section of the Division of Development Services, Department of Metropolitan Development of the City of Indianapolis. The floor plans submitted to the City in order to obtain the latter permit indicated the owners intended to construct an additional apartment inside the carriage house. The Board of Zoning Appeals granted a variance to the owners to allow the use of the main house for the home show and also to restore the roof line of the carriage to a pitched gable roof.

The carriage house renovation was performed in accordance with the historical significance of the property and after renovation was complete, the carriage house contained three apartment units. The present Homeowners purchased the property in 1986 and since that time have used the apartments as separate rental units.

In 1989, the Commission filed a complaint for injunctive relief seeking to enjoin Homeowners from using the real estate for multi-family residential purposes. After a hearing, the trial court entered judgment denying the Commission's request. However, the court did enjoin Homeowners from expanding the use. This appeal ensued.

▪ In an action to enjoin alleged zoning violations we will reverse if the trial court has abused its discretion by failing to grant injunctive relief. An abuse of discretion will be found only if the trial court's decision is against logic. *Metro. Dev. Comm'n of Marion County v. Hair* (1987), Ind.App., 505 N.E.2d 116.

▪ Our review is further constrained by the trial court's entry of special findings of fact and conclusions of law which were requested by the Commission before the trial began. Such findings must include all of the facts necessary for recovery by a party in whose favor the conclusions of law are found. *Dahnke v. Dahnke* (1989), Ind. App., 535 N.E.2d 172, *reh. denied.* The

rejected on other grounds by *Osler Ins., Inc. v.* *Inglert* (1991), Ind., 569 N.E.2d 636.

purpose of special findings is to serve as a theory of the judgment. *Willett v. Clark* (1989), Ind.App., 542 N.E.2d 1354. Our standard of review of special findings is two-tiered; we first determine whether the evidence supports the findings and we then determine whether the findings support the judgment. *W & W Equipment Co., Inc. v. Mink* (1991), Ind.App., 568 N.E.2d 564, *trans. denied.* Special findings and the judgment flowing therefrom will be set aside only if they are clearly erroneous. *Id.*

Findings of fact are clearly erroneous if the record lacks any facts or reasonable inferences to support them. *De-Haan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, *trans. denied.* In determining whether the special findings and judgment are clearly erroneous, we will not reweigh the evidence or judge witness credibility. *Id.* However, a judgment is contrary to law if it is contrary to the trial court's special findings. *Id.* That is, special findings are adequate only if sufficient to support a valid legal basis for the judgment. *Dahnke, supra.*

## I.

The Commission correctly asserts that in seeking injunctive relief concerning a violation of a zoning ordinance, the moving party must first prove the existence of an applicable ordinance and a violation of that ordinance. *Harbour Town Associates, Ltd. v. City of Noblesville* (1989), Ind.App., 540 N.E.2d 1283. In the case before us the Commission has carried its initial burden of proof. The real estate here in question is zoned D–2 for single family residential occupancy. The D–2 provisions are set forth in the Dwelling Districts Zoning Ordinance of Marion County (DDZO) which was adopted July 18, 1966. The present use of the carriage house as a multi-family apartment dwelling is in clear violation of the DDZO. However, the analyses does not end here.

The use of land or buildings may be protected from existing zoning restrictions if the use is one which existed and was lawful when the restrictions be-

came effective and which continued to exist since that time. *Hair, supra; Metropolitan Dev. Comm'n of Marion County v. Marianos* (1980), 274 Ind. 67, 408 N.E.2d 1267. This nonconforming use is an affirmative defense which must be proven by the party asserting it. *O'Banion v. State ex rel. Shively* (1969), 146 Ind.App. 223, 253 N.E.2d 739, *trans. denied.*

In the case before us, Homeowners alleged nonconforming use as one of their affirmative defenses to the Commission's complaint for injunctive relief. The trial court concluded that Homeowners proved by a preponderance of the evidence that the apartment use of the carriage house was legally established as a nonconforming use prior to the effective date of any relevant zoning ordinance. The Commission attacks this conclusion on two grounds. First, the Commission contends the trial court's findings are insufficient because they do not indicate that the use of the carriage house as an apartment was lawful at the time such use first began. Thus, argues the Commission, the trial court's conclusion is not supported by the findings. Second, according to the Commission, the trial court's conclusion and judgment are contrary to law because Homeowners failed to prove the two essential elements of their affirmative defense of nonconforming use, namely: (1) the use of the carriage house as an apartment dwelling was lawful at the time such use first began, and (2) the use of the carriage house as an apartment dwelling existed on the effective date of the DDZO, July 18, 1966.

We disagree with the Commission that the trial court's findings are insufficient. In its finding of fact No. 12 the trial court indicated, "Prior to December 2, 1952, the accessory use of the apartments, a non-conforming use of the Carriage House was established." Although not a model of clarity and specificity, this finding sufficiently establishes that the carriage house was lawfully used as an apartment unit before the effective date of the DDZO.

The record in this case also supports the trial court's finding and conclu-

sion that the use of the carriage house as an apartment unit was established on the effective date of the DDZO. The carriage house was remodeled in or around 1952 for the specific purpose of accommodating rental units. Apartment use of the carriage house continued at various times thereafter until damaged by fire in the late 1960's or early 1970's. Thus, there was sufficient evidence that the apartment use of the carriage house was "in existence" on July 18, 1966, even though there was no evidence of the use on that specific date. A previously established nonconforming use may be deemed to be in existence on the day a zoning ordinance becomes effective even though it is not being exercised on that very day. *Dandy Co., Inc. v. Civil City of South Bend* (1980), Ind.App., 401 N.E.2d 1380.

There is also evidence in the record demonstrating that apartment use of the carriage house was lawful at the time such use first began. Mrs. Willkie testified that she and her husband had employed legal counsel in 1952 to insure that the conversion of the carriage house into two apartment units was permissible under then-existing zoning ordinances; she recalled that approval was obtained at that time. This unobjected to testimony is consistent with the parties' stipulation that Homeowners' property was zoned U–1 under the provisions of a 1922 zoning ordinance. The ordinance, which was introduced into evidence, prohibits "apartment houses" only if they consist of three or more units. Prior to 1952, the carriage house here in question consisted of two apartment units and the Commission introduced no evidence demonstrating the 1922 ordinance was not in effect in 1952.

Because the record supports an inference that the apartment use of the carriage house was a permissible use under applicable zoning ordinances in existence in 1952, we may not say that the trial court's conclusion is clearly erroneous. *DeHaan, supra.*

## II.

The Commission argues that even if the use of the carriage house as an apartment dwelling initially began as a permissible nonconforming use, the use was extinguished by either abandonment, destruction or expansion. The Commission contends the evidence is clear that the use was abandoned after July 18, 1966, the effective date of the DDZO, because the owners at that time allowed the carriage house to remain unrepaired and unused for ten or more years after the fire. The Commission also argues that even if the apartment use was not abandoned, the 1985 renovation created three apartments where there had been only two, thereby extinguishing the nonconforming use by an impermissible expansion of the use.

 As a general rule the defense of nonconforming use is unavailing if that use is subsequently abandoned. *Dandy, supra.* However, once the moving party demonstrates a nonconforming use, the adverse party carries the burden of proving the use was terminated by abandonment. *Jacobs v. Mishawaka Bd. of Zoning Appeals* (1979), 182 Ind.App. 500, 395 N.E.2d 834. The Commission in this case has failed to carry its burden.

 Contrary to the Commission's argument, the trial court was not required to find that the former owners of the property abandoned its nonconforming use by virtue of their long failure to restore the carriage house. Mere discontinuance of a nonconforming use is not *per se* sufficient to constitute abandonment. *Stuckman v. Kosciusko County Bd. of Zoning Appeals* (1987), Ind., 506 N.E.2d 1079; *Dandy, supra.* Rather, there must exist "the concurrence of an intent to abandon and a voluntary act or failure to act signifying abandonment." *Stuckman,* 506 N.E.2d at 1080. Here, the record does not support the notion that there was any intent to abandon the nonconforming use. In the 1970's, the then owners of the property made an affirmative expression of their intent to renovate the carriage house. There was also evidence indicating the eventual cost of renovation of the carriage house was substantial. A period of non-use will not constitute abandonment if the non-use is the

result of the financial inability of the owner to continue in business. *Smith v. Howard* (1966), Ky., 407 S.W.2d 139, 141–42, quoted with approval in *Dandy, supra,* 401 N.E.2d at 1383.

 The Commission correctly points out that nonconforming uses are not favored since they detract from the purpose of a zoning ordinance, namely: (a) to restrict certain classes of uses to certain areas, (b) to secure the gradual elimination of nonconforming uses and, (c) to restrict or diminish such uses. *Misner v. Presdorf* (1981), Ind.App., 421 N.E.2d 684, *trans. denied.* However, in this case, consistent with such a policy, the DDZO permits reconstruction of nonconforming uses which are damaged or partially destroyed by fire when the damage or destruction does not exceed two-thirds of the gross floor area of the structure. DDZO, Ch. II, Sec. 2.00. The trial court specifically found that the damage or destruction to the carriage house did not exceed two-thirds of the gross floor area. The evidence of record supports the finding and therefore is not clearly erroneous.

We next turn to the Commission's argument that the nonconforming use of the carriage house was extinguished by expansion of the use. According to the Commission, as a matter of law, the addition of a third apartment terminated the nonconforming use of the carriage house as an apartment rental unit. The Homeowners counter that we must uphold the trial court because the addition of a third apartment to the carriage house was a mere intensification of a nonconforming use which neither changed the character of the use as rental apartments nor adversely affected the neighborhood.

 We cannot agree with Homeowners' contention. As indicated elsewhere in this opinion, use of the carriage house as an apartment rental unit was lawful only because the use was not in violation of the 1922 zoning ordinance. However, the 1922 ordinance did not permit an apartment dwelling, in a residential district, containing three or more units. Thus the addition of a third apartment constitutes an impermissible expansion of the initial nonconforming use.

 However, a finding of an impermissible expansion in this case does not necessitate the drastic remedy urged by the Commission, namely to completely enjoin apartment use of the carriage house altogether. For example, in *O'Banion, supra,* we held that if the use of property to sell beer before the effective date of the applicable zoning ordinance constituted a nonconforming use, then continuation of the use would not permit other alcoholic beverages but would be limited to the sale of beer only. In *Chizum v. Elkhart County Plan Comm'n,* (1990) 147 Ind.App. 691, 263 N.E.2d 654, we held that the installation of lights at a drag strip to afford night-time racing was an illegal expansion of the nonconforming use. This court upheld the trial court's order to remove the lights and to allow continuation of daytime racing. In *Stuckman, supra,* our supreme court held that a nonconforming use of certain lots of property for an automobile salvage yard could not be expanded onto adjoining lots after the effective date of the applicable zoning regulation. The case was remanded to the trial court with directions to restore the status quo.

Consistent with the foregoing authority we reverse that portion of the trial court's judgment which permanently enjoins Homeowners from increasing the nonconforming use of the property from its current apartment use. We remand with instructions to enter an appropriate order permanently enjoining Homeowners from apartment use of the carriage house which exceeds two rental units.

In all other respects the judgment of the trial court is affirmed.

SHARPNACK and BARTEAU, JJ., concur.