Anthony F. RAGUCCI, Appellant–
Defendant,

v.

The METROPOLITAN DEVELOPMENT
COMMISSION OF MARION COUNTY,
Appellee–Plaintiff.

No. 49A02–9607–CV–463.

Court of Appeals of Indiana.

Sept. 9, 1997.

Rehearing Denied Dec. 1, 1997.

Matthew A. Griffith, Thrasher and Associates, P.C., Indianapolis, for Appellant–Defendant.

Marguerite M. Sweeney, Office of Corporation Counsel, Indianapolis, for Appellee–Plaintiff.

## OPINION

BARTEAU, Judge.

Anthony Ragucci appeals a summary judgment that his operation of an apartment building in a neighborhood zoned for one and two-family dwellings violates the Marion County Dwelling Districts Zoning Ordinance (DDZO) of 1966.

He raises six issues, but we address only the following because it is dispositive:

1. Whether the remodeling of an apartment building to increase the number of apartments extinguishes the building's status as a legally established nonconforming use of the property?

We reverse.

## FACTS

The Hatherleigh, the real estate which is the subject of this action, is a multi-family residential building located at the corner of 44th Street and Park Avenue in Indianapolis. It was built sometime prior to 1918 and it originally contained at least four two-bedroom apartments[1]. The first zoning ordinance for the City of Indianapolis was adopted in 1922, and the area where the Hatherleigh is located was zoned for single-family and two-family dwellings. Thus, upon the adoption of the 1922 ordinance, the use of the Hatherleigh as a four or five apartment dwelling became a legally established nonconforming use of the property[2]. Sometime between 1969 and 1972, a previous owner subdivided two of the two-bedroom apartments by adding two kitchens, creating four one-bedroom apartments. The Hatherleigh then contained seven apartments. In 1974, an eighth apartment was created when another previous owner converted the third floor of the building from an attic to a three-bedroom apartment. About 20 years later, on October 11, 1994, the Metropolitan Development Commission (the Commission) brought an action against Anthony Ragucci, the present owner of the Hatherleigh, for operating a multi-unit apartment building in a one and two-family zone. The trial court granted summary judgment for the Commission, enjoined Ragucci from using the Hatherleigh as a dwelling for more than four families, and ordered Ragucci to restore the

building to a four-family dwelling. The injunction was stayed pending this appeal.

## DISCUSSION

In reviewing the grant of a summary judgment motion, we apply the same standard applicable in the trial court. Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. So, we must reverse the grant of a summary judgment motion if the record discloses an incorrect application of the law to those facts. *Ayres v. Indian Heights Volunteer Fire Dept., Inc.*, 493 N.E.2d 1229, 1234 (Ind.1986).

A "nonconforming use" is a use of a premises which lawfully existed prior to the enactment of a zoning ordinance, and which is allowed to continue after the effective date of the ordinance even though it does not comply with the applicable use restrictions. *Jacobs v. Mishawaka Bd. of Zoning Appeals*, 182 Ind.App. 500, 501, 395 N.E.2d 834, 835–36 (1979). Existing nonconforming uses are typically exempted from use restrictions, because the right of a municipality to enact zoning restrictions is subject to the vested property interests acquired prior to the enactment of the ordinances. *Id.* at 501, 395 N.E.2d at 836. An ordinance prohibiting any continuation of an existing lawful use in a zoned area is unconstitutional as a taking of property without due process of law, and as an unreasonable exercise of police power. *Stuckman v. Kosciusko County Bd. of Zoning Appeals*, 506 N.E.2d 1079, 1080 (Ind. 1987). Once a legal nonconforming use has been established, the burden of proving the termination of that use rests on those opposing the non-conforming use. *Jacobs*, 182 Ind.App. at 507, 395 N.E.2d at 839.

1. The parties dispute whether a fifth apartment was part of the original construction or was added in approximately 1927. However, they have stipulated that the fifth apartment is included as part of the legally established non-conforming use of the building under the 1996 amendments to the 1989 Dwelling District Zoning Ordinance of Marion County.

2. In 1966, the city adopted the Dwelling Districts Zoning Ordinance (DDZO), which permitted single-family dwellings and two-family dwellings in the area of the Hatherleigh, with the two-family dwellings permitted only on corner lots. The 1966 ordinance was replaced in 1989 with a DDZO which excepts from its provisions legally established nonconforming uses. Because the modifications at issue here were done between 1969 and 1974, the 1966 DDZO is the one relevant to our analysis.

■ The extent to which a change in a nonconforming use is permissible depends upon the provisions of the zoning regulation, the nature of the use in question, and the facts of the particular case as measured against the language of the applicable ordinance. *Id.* at 502, 395 N.E.2d at 836. In *Jacobs*, the applicable ordinance prohibited changing a nonconforming use to another nonconforming use of "greater restriction." A change in nonconforming use from a service station to a used car business was held permissible, because the proper zoning classification for a service station, C–4, was the same as the proper classification for a used car business. So, the new nonconforming use was of the same restriction, and not greater restriction. *Id.* at 507, 395 N.E.2d at 839.

The 1966 DDZO which applies to the Hatherleigh states in pertinent part:

1. With the exception of legally established nonconforming uses, no land, building, structure, premises or part thereof shall be used or occupied except in conformity with these regulations and for uses permitted by this ordinance.

2. No building, structure, premises or part thereof shall be constructed, erected, converted, enlarged, extended, reconstructed, or relocated except in conformity with these regulations and for uses permitted by this ordinance.

Marion County, Ind. Dwelling District Zoning Ordinance § 2.00(A)(1) & (2) (1966). The Commission contends Ragucci's legally established nonconforming use was limited to the operation of a four-apartment building; thus, the creation of the additional apartments violates § 2.00(A)(2) of the DDZO. Ragucci's position is that his building is protected from all of the zoning restrictions by virtue of its previous use as a multi-family dwelling, regardless of the number of units it contains.

■ Our decisions have not addressed the specific question whether the creation of additional apartments in an already nonconforming apartment building, without any increase in the size of the building itself, extinguishes a legally established nonconforming use by impermissibly expanding it.[3] We believe the alteration of the Hatherleigh to create additional apartments is most appropriately characterized as an intensification of the nonconforming use which does not have the effect of extinguishing it. *See Stuckman,* 506 N.E.2d at 1081 (the intensification of a nonconforming business use within the same area does not constitute an impermissible extension, expansion, or change in the use). *And see generally* Eunice A. Eichelbarger, Annotation, *Change in Volume, Intensity, or Means of Performing Nonconforming Use as Violation of Zoning Ordinance,* 61 A.L.R.4th 806 § 40 (1988) (reviewing decisions which find an increase in number of tenants to be a permissible intensification of nonconforming use).

■ Factors to be considered in determining whether a change in a non-conforming use is permissible include:

1. The time, space, and volume of the change;

2. Its possible effect on the owners or occupants of neighboring properties, or on the public;

3. Whether the alteration is in conformity with a police, building, or other regulation; and

4. Whether the nonconformity is in the character of the structure apart from the use, or in the character of the use apart from the structure.

*City of Beech Grove v. Schmith,* 164 Ind.App. 536, 543, 329 N.E.2d 605, 610 (1975).[4]

So, it appears the increase in the number of apartments in *Goodman* was actually a change from a *conforming* use to a nonconforming one. As such, *Goodman* does not help us with the question presented here.

3. The Commission relies on *Metropolitan Dev. Comm'n v. Goodman,* 588 N.E.2d 1281, 1287 (Ind.Ct.App.1992). There, we characterized the addition of a third apartment to a building that had previously contained two apartments as "an impermissible expansion of the initial non-conforming use." However, that case involved an ordinance that prohibited apartment houses only if they contained three or more units, *id.* at 1286.

4. While *Schmith* lists four factors to be considered, we address only the fourth here. The record contains no evidence regarding the second

In *Schmith*, we determined that a proposed rearrangement of rooms and the addition of two bathrooms would not destroy the existing nonconforming use of a building "for apartment purposes." *Id.* at 541, 329 N.E.2d at 609. The Schmith property had been used as an apartment building since before 1935. In 1951, the first Beech Grove zoning ordinance zoned the area for single-family dwellings only, and it continued to be so zoned by subsequent ordinances. As a result, Schmith established that his use of the property was a legally existing nonconforming use when the Beech Grove ordinance took effect. *Id.*

In *Schmith*, as in *Jacobs*, we focused on the nature and character of the use in deciding whether a change in the nonconforming use was permissible. We noted that the Schmith structure "had been used as a multiple family dwelling for approximately forty years and whether denominated a 'rooming house,' 'multiple dwelling,' or 'apartment use,' it remained a unified structure devoted to the housing of unrelated persons with no change in its height, size, or lateral bulk."[5] *Id.* at 545, 329 N.E.2d at 611. Schmith's changes, which consisted of rearranging the interior alignment of the rooms and adding two more bathrooms, could not be considered a different use. *Id.*

Like the Schmith property, the Hatherleigh has always been a "unified structure devoted to the housing of unrelated persons." The rearrangement of the interior alignment of its rooms, the addition of two kitchens, and the finishing of the attic space cannot be considered a different use of the property, but is rather an intensification of the pre-existing use. Even though the changes increased the number of apartments, the Hatherleigh continued to be used as a multiple

family dwelling, as it always had been. The alterations at issue here changed "the character of the structure apart from the use," and did not affect "the character of the use apart from the structure." *Id.* at 543, 329 N.E.2d at 610. As such, the changes did not have the effect of extinguishing the legally established nonconforming use of the building.

### CONCLUSION

The undisputed material facts regarding the Hatherleigh's alteration to create additional apartments show that the legally established nonconforming use of the Hatherleigh continued despite the alteration. Accordingly, the appellant Ragucci is entitled to judgment as a matter of law. We reverse the judgment of the trial court and order the trial court to dissolve its injunction and enter judgment for the appellant.

SHARPNACK, C.J., concurs.

KIRSCH, J., dissents with separate opinion.

KIRSCH, Judge, dissenting.

I respectfully dissent.

The majority's premise is that "the alterations at issue here changed 'the character of the structure apart from the use,' and did not affect 'the character of the use apart from the structure.'" Op. at 106 (citing *City of Beech Grove v. Schmith*, 164 Ind.App. 536, 543, 329 N.E.2d 605, 610 (1975)). Based upon this premise, the majority concludes that the changes did not have the effect of extinguishing the existing nonconforming use of the building.

---

factor, and we note that several affidavits from neighbors were stricken by the trial court as inadmissible. The striking of the affidavits was not challenged on appeal. The Commission did address the third factor when it alleged violation of various versions of the zoning regulations; however, our determination that the changes to the building continued its legally existing nonconforming use makes those regulations inapplicable. Finally, we find no issue arising from the first factor since, as in *Schmith*, there was only an interior realignment, with no change in the "height, size, or lateral bulk" of the structure,

164 Ind.App. at 545, 329 N.E.2d at 611, and because the building continued to be used for apartment purposes, there was no change in the "time" or frequency of the intensified nonconforming use. *See* Annotation, *Changes, Repairs, or Replacements in Continuation of Nonconforming Use*, 87 A.L.R.2d 4 § 9 (1963).

5. The ordinance we considered in *Schmith* allowed repairs or alterations that did not change the height, size, or lateral bulk of a structure. 164 Ind.App. at 538, 329 N.E.2d at 607.

Whether a nonconformity is in the character of the use or the character of the structure, however, is only one of several factors which are to be considered under *Schmith.* In addition to the character of the change, courts are to consider the time, space, and volume of the change; the possible effect on owners and occupants of neighboring properties and on the public; and whether the alteration is in conformity with police, building and other regulations. *Id.* Courts should look to the effect of the particular intensification on the particular neighborhood. *See* Eunice A. Eichelbarger, Annotation, *Change in Volume, Intensity, or Means of Performing Nonconforming Use as Violation of Zoning Ordinance,* 61 A.L.R.4th 806 § 40 (1988).

I believe that the consideration of the factors set out in *Schmith* is a factual inquiry which renders summary judgment inappropriate. Thus, while I concur that the trial court erred in entering summary judgment for the Development Commission, I respectfully dissent from the order that judgment be entered summarily for the owner.