Anthony F. RAGUCCI, Appellant
(Defendant below),

v.

The METROPOLITAN DEVELOPMENT
COMMISSION OF MARION COUNTY,
Appellee (Plaintiff below).

No. 49S02–9805–CV–299.

Supreme Court of Indiana.

Dec. 2, 1998.

Matthew A. Griffith, Indianapolis, for Appellant.

Marguerite M. Sweeney, Indianapolis, for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

We granted transfer to consider the legal standards for evaluating changes in a legally established nonconforming use under a zoning ordinance. We hold that the interpretation of ordinances that restrict the expansion of nonconforming uses turns in the first instance on the specific language of the relevant ordinance, giving its words their plain, ordinary, and usual meaning. Each municipality is, subject to constitutional limitations, free to enact an ordinance that limits the expansion of nonconforming uses in the manner and to the degree that it deems appropriate.

### Factual and Procedural Background

The Hatherleigh has been a multi-unit apartment building in Indianapolis for at least 80 years. In 1966 Marion County adopted a Dwelling Districts Zoning Ordinance ("DDZO"),[1] which permitted only a single- or two-family dwelling on the site of the Hatherleigh. The Hatherleigh thereby became a legally established nonconforming use, subject to a separate DDZO provision prohibiting the conversion of nonconforming buildings.

At the time the DDZO was adopted, the Hatherleigh contained five units—four two-bedroom apartments and a terrace/basement apartment. Between 1969 and 1972 two of the two-bedroom apartments were converted into four one-bedroom apartments. In 1974 the previously uninhabited third floor attic of the Hatherleigh was transformed into one

---

1. The 1966 DDZO was replaced by the 1989 DDZO but the ordinance language at issue in this case did not change. *Compare* MARION COUNTY, IND., DWELLING DISTRICTS ZONING ORDINANCE § 2.00(A)(1) & (2) (1966) *with* MARION COUNTY, IND., DWELLING DISTRICTS ZONING ORDINANCE § 2.00(A)(1) & (3) (1989).

three-bedroom apartment. From that time until today, the Hatherleigh has contained eight dwelling units.

Anthony Ragucci purchased the Hatherleigh in 1986. In 1994 the Metropolitan Development Commission of Marion County brought an action against Ragucci alleging that his building was in violation of the DDZO. Ragucci asserted a legally established nonconforming use and both Ragucci and the Commission moved for summary judgment. The trial court concluded that the creation of the additional apartments was a violation of the DDZO and granted the Commission's motion. A divided Court of Appeals reversed and directed that summary judgment be entered in favor of Ragucci. *Ragucci v. Metropolitan Dev. Comm'n*, 685 N.E.2d 104 (Ind.Ct.App.1997). We granted transfer.

## I. The Ordinance Violation

■ The ultimate purpose of zoning ordinances is to confine certain classes of uses and structures to designated areas. *Berkey v. Kosciusko County Bd. of Zoning Appeals*, 607 N.E.2d 730, 732 (Ind.Ct.App.1993). Because nonconforming uses by definition detract from the fulfillment of that purpose, zoning ordinances properly seek to restrain them. *Id.* In light of this important purpose, Indiana courts have refused to permit the expansion of or changes in nonconforming uses in a variety of factual situations. *See, e.g., Stuckman v. Kosciusko County Bd. of Zoning Appeals*, 506 N.E.2d 1079 (Ind.1987) (nonconforming automobile graveyard existing on lots E–K could not be expanded on to lots A–D); *Berkey*, 607 N.E.2d at 732 (nonconforming junkyard could not be expanded beyond the land being so used at the time the restrictive ordinance was adopted); *Metropolitan Dev. Comm'n v. Goodman*, 588 N.E.2d 1281 (Ind.Ct.App.1992) (nonconforming two-unit carriage house apartment building could not be expanded into three units);

*Taylor v. Metropolitan Dev. Comm'n*, 436 N.E.2d 1157 (Ind.Ct.App.1982) (nonconforming use of building as a package liquor store did not authorize the change of its use to a tavern); *Chizum v. Elkhart County Plan Comm'n*, 147 Ind.App. 691, 263 N.E.2d 654 (1970) (poles and lights for night racing could not be erected at nonconforming daytime drag racing track); *O'Banion v. State ex rel. Shively*, 146 Ind.App. 223, 253 N.E.2d 739 (1969) (nonconforming sale of beer did not justify use of property for the sale of any other alcoholic beverage).

### A. The legal standard for evaluating a nonconforming use

The 1966 DDZO authorized and at the same time restricted nonconforming uses in the following provisions:

1. With the exception of legally established nonconforming uses, no land, building, structure, premises or part thereof shall be used or occupied except in conformity with these regulations and for uses permitted by this ordinance.

2. No building, structure, premises or part thereof shall be constructed, erected, converted, enlarged, extended, reconstructed, or relocated except in conformity with these regulations and for uses permitted by this ordinance.

MARION COUNTY, IND., DWELLING DISTRICTS ZONING ORDINANCE § 2.00(A) (1966).

Although quoting this language and acknowledging that the DDZO was "relevant to our analysis," *Ragucci*, 685 N.E.2d at 105 n. 2, the Court of Appeals majority did not address the particular language of the DDZO. Rather, the majority took the view that the changes were permitted because "the alteration of the Hatherleigh to create additional apartments is most appropriately characterized as an intensification of the nonconforming use which does not have the effect of extinguishing it." *Id.* at 106.[2]

---

**2.** Both parties agree that extinguishment was not at issue in this case. Appellant's Brief in Opposition to Transfer at 4 ("a court cannot order *extinguishment* of a zoning use which has been determined to be a legally established, and thus, permissible, nonconforming use, unless the owner has changed the property to such an extent that the 'zoning use' has been changed"); Brief

in Support of Appellee's Petition for Transfer at 2 ("[s]ince the parties stipulated that the nonconforming dwelling was legally established as five units, the drastic remedy of extinguishment of the multi-family use was not possible"). The Commission never sought to have the nonconforming use extinguished. Rather, the Commission sought to restrict the expansion of the non-

The majority then adopted a list of four "[f]actors to be considered in determining whether a change in a nonconforming use is permissible": (1) "[t]he time, space, and volume of the change;" (2) "[i]ts possible effect on the owners or occupants of neighboring properties;" (3) "[w]hether the alteration is in conformity with a police, building, or other regulation;" and (4) "[w]hether the nonconformity is in the character of the structure apart from the use, or in the character of the use apart from the structure." *Id.* The court cited *City of Beech Grove v. Schmith,* 164 Ind.App. 536, 543, 329 N.E.2d 605, 610 (1975) as the source of these factors. However, the four factors were mentioned in *Schmith* merely as "certain key factors [that] are often referred to," in evaluating the extent and character of permissible changes in nonconforming uses. *Id. Schmith* itself did not apply these factors in ruling on the proposed changes to the nonconforming building in that case. Indeed, they have never before been adopted by an Indiana court as a test to guide courts considering the expansion of a nonconforming use. More importantly, the four factor test, if viewed as a general rule, imposes the same inquiry on all cases, despite very different wording adopted by different municipalities clearly reflecting different policies. For example, the first factor considers the "space" and "volume" of the change. This ignores the reality that some zoning ordinances explicitly allow a certain percentage increase in a nonconforming building and others, such as the DDZO, are written very restrictively to prohibit any changes to a building "or part thereof."

Ragucci cites several cases of varying degrees of factual similarity to his own situation. These various authorities underscore the need to examine the language of the ordinance at issue. For example, in *Schmith,* the ordinance at issue merely prohibited alterations or repairs that would change the "height, size or lateral bulk of the structure[.]" *Id.* at 545, 329 N.E.2d at 611. The building was located in an area zoned for single-family dwellings, but had been established as a nonconforming use as a home for

wayward girls and later to house four families. The city denied the owner permission to renovate, rearrange certain rooms and add two more bathrooms. The Court of Appeals allowed the alterations, noting that "Schmith's structure had been used as a multiple family dwelling for approximately forty years and whether denominated 'rooming house', 'multiple dwelling', or 'apartment use', it remained a unified structure devoted to the housing of unrelated persons with no change in its height, size or lateral bulk." *Id.* Similarly, *Schneider v. Board of Appeals,* 402 Ill. 536, 84 N.E.2d 428 (1949) held that interior alterations to a nonconforming apartment house changing it from five to ten apartments was a permissible extension. The ordinance there provided that the area occupied by a nonconforming use

> may be enlarged, provided such enlargement shall not exceed an area equal to 50% of the area of the ground floor of that part of the building in which said nonconforming use is situated, or such use may be extended throughout the building, provided no structural alterations are made therein.

*Id.* at 430–31. In light of the language of the relevant ordinances, *Schmith* and *Schneider* do little to bolster Ragucci's argument that his factually similar modifications are not a violation of the very differently worded DDZO.

■ As suggested by *Schmith* itself, the language of the ordinance is the primary concern. "Drawing conclusions from the cases is dangerous because the zoning regulations governing nonconforming uses vary widely from jurisdiction to jurisdiction." 164 Ind.App. at 544, 329 N.E.2d at 611. This is true both from state to state and also from municipality to municipality within this state. As noted in the A.L.R. annotation cited in *Schmith* as the source of the four factors, the right to alter or extend a nonconforming structure "depend[s] primarily on the terms of the applicable zoning ordinance and the nature or extent of the alteration or exten-

conforming use of five apartments into eight apartments. *See Goodman,* 588 N.E.2d at 1287 (the expansion of a nonconforming use does not

necessitate the "drastic remedy" of extinguishment).

sion[.]" Annotation, *Zoning changes, repairs, or replacements in continuation of nonconforming use,* 87 A.L.R.2d 4, 71 (1963). "Differences in applicable zoning regulations, and in the circumstances under which the question arose, have led to different conclusions as to the right to enlarge or extend an existing nonconforming use." *Id.* at 15. Moreover, Indiana land use jurisprudence since *Schmith* has reiterated the importance of ordinance language without mentioning the four factor test. *See, e.g., Taylor,* 436 N.E.2d at 1158 ("[t]he extent to which a change is permissible depends upon the provision of the zoning ordinance"); *Jacobs v. Mishawaka Bd. of Zoning Appeals,* 182 Ind. App. 500, 502, 395 N.E.2d 834, 836 (1979) ("[e]ach case involves and requires a determination and consideration of the facts of the particular case measured against the language of the applicable ordinance or statute").[3] Accordingly, we reject the four factor test relied upon by the Court of Appeals majority in this case as a general test for evaluating nonconforming uses.

### B. *The relevant DDZO provisions*

■ Interpretation of an ordinance is subject to the same rules that govern the construction of a statute. *Ad Craft, Inc. v. Board of Zoning Appeals,* 693 N.E.2d 110, 114 (Ind.Ct.App.1998), *trans. denied.* Words are to be given their plain, ordinary, and usual meaning, unless a contrary purpose is shown by the statute or ordinance itself. *Cox v. Worker's Compensation Bd.,* 675 N.E.2d 1053, 1057 (Ind.1996). If the legislative intent is clear from the language of the statute, the language prevails and will be given effect. *State ex rel. Indiana & Michigan Electric Co. v. Sullivan Circuit Court,* 456 N.E.2d 1019, 1020 (Ind.1983). We believe that the DDZO clearly demonstrates the intent of the Marion County Council to constrain the expansion of nonconforming uses.

■ The DDZO provides that: (1) "[n]o building ... or part thereof" (2) "shall be ...

converted" (3) "except in conformity with these regulations and for uses permitted by this ordinance." DDZO § 2.00(A)(2) (1966). As an initial matter then the question in this case is whether either dividing two two-bedroom apartments into four one-bedroom apartments or changing an unoccupied attic into a three-bedroom apartment violates this provision. First, the apartments and the attic plainly are governed by the ordinance because each is a "part" of the building. Ragucci contends that the Court of Appeals majority was correct "not to segregate the Hatherleigh into small fractions and to consider [it instead] as a single building with a singular 'zoning use.'" Brief in Opposition to Petition for Rehearing at 14. However, this argument ignores the language of the DDZO and instead seeks to rely on cases interpreting significantly different ordinance language. *See, e.g., Schmith,* 164 Ind.App. at 545, 329 N.E.2d at 611. Moreover, this contention is inconsistent with Indiana case law that has considered a nonconforming piece of land in terms of its fractional parts for purposes of a zoning ordinance that prohibited the expansion of nonconforming uses. *See Stuckman,* 506 N.E.2d at 1081 (nonconforming automobile graveyard existing on lots E–K could not be expanded on to lots A–D); *Berkey,* 607 N.E.2d at 732 (nonconforming junkyard could not be extended to other parts of the same lot beyond the area of land used as a junkyard at the time of the enactment of the ordinance).

The term "converted" is not defined by the DDZO. Its ordinary meaning is "to alter the physical ... properties of[;] to change from one form or function to another[;] to alter for more effective utilization." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 253 (10th ed. 1993). Physical changes in the two-bedroom apartments were described as: "sunroom, living room becomes a bedroom, bedroom (front) becomes kitchen/bath ... [and] the dining room becomes a living room." In short, although these apartments continue to function as dwelling units, their form has

---

3. The Court of Appeals cites *Jacobs* for this proposition of law and discusses the relevant ordinance language of that case, but then decides Ragucci's case based on the four factor test mentioned in *Schmith* and without reference to the language of the DDZO. *See Ragucci,* 685 N.E.2d at 106.

clearly been changed. In simple English, two apartments were "converted" into four.

Similarly, the third floor of the Hatherleigh was also "converted" from an unoccupied attic into a three-bedroom apartment. This change required the alteration of the third floor's physical properties. Although not detailed in the record, the changes to the attic were substantial enough to require the use of licensed contractors and clearly more extensive than those required to convert the existing two bedroom apartments. In addition to the alterations in form, the function of the attic has been changed from an uninhabitable place of storage to an inhabitable dwelling.

Ragucci argues that "[f]or purposes of interpreting zoning ordinances, appellate decisions suggest that the term 'conversion' refers to a change in zoning use, rather than physical changes within a property." Brief of Appellant at 25. However, the cases he cites in support of this view deal with vastly different ordinance language. *See, e.g., Time–Low Corp. v. City of LaPorte Bd. of Zoning Appeals*, 547 N.E.2d 877, 879 (Ind. Ct.App.1989) (ordinance stated that a "nonconforming use may not be changed to any other nonconforming use"); *Metropolitan Dev. Comm'n v. Mullin*, 399 N.E.2d 751, 753 (Ind.Ct.App.1979) (ordinance regulated home offices and required that the "primary use of the dwelling shall remain residential"). These ordinances may well focus on the nature of the use, for example residential rather than commercial. In contrast, the DDZO restricts physical conversions as well. The DDZO applies "converted" to "[n]o building ... or part thereof[.]" We understand it to refer to physical changes to the building, as well as a change in zoning use. In short, we conclude the alterations to the two-bedroom apartments and the attic were a violation of the DDZO, based on the plain and ordinary meaning of its language.[4]

### C. *Constitutional issues*

■ Ragucci contends that the third floor of the Hatherleigh "must have some zoning use. Otherwise, enforcement of the [DDZO] ... will have resulted in an unconstitutional taking of the third floor in violation of due process." Brief of Appellant at 37. We take this to be a shorthand assertion that the ordinance violates the Takings Clause of the Fifth Amendment, applicable to the States by reason of the Fourteenth Amendment, which prohibits the deprivation of "property[ ] without due process of law[.]" U.S. CONST. amend. 14; *see also Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 239, 17 S.Ct. 581, 41 L.Ed. 979 (1897). Ragucci raises only a federal constitutional claim by using the "due process" language of the federal constitution and citing cases decided on federal constitutional grounds. Accordingly, we do not consider whether the Indiana Constitution raises any different considerations. *Valentin v. State*, 688 N.E.2d 412, 413 (Ind. 1997).

In *Board of Zoning Appeals v. Leisz*, 702 N.E.2d 1026 (Ind.1998), also decided today, we discussed the Fifth and Fourteenth Amendments in the context of an ordinance that required the registration of nonconforming uses and provided for the forfeiture of those uses not registered. The federal constitutional analysis set forth in *Leisz* is equally applicable to the DDZO provision at issue in this case.

As elaborated in *Leisz*, the Supreme Court has identified two discrete categories of regulations—physical invasions and complete denials of all economically beneficial use—that violate the Takings Clause regardless of the legitimate state interest advanced. 702 N.E.2d at 1028–29. Ragucci has not suffered a physical invasion of his property. And, because the Hatherleigh continues to be usa-

---

4. Although not discussing the specific language of this DDZO provision, in *Goodman*, 588 N.E.2d at 1285, the Court of Appeals found similar alterations to a building to be a violation of the 1966 DDZO. The building at issue in *Goodman* was a carriage house that was transformed into two apartments in 1951. The apartments became a legally established nonconforming use in 1966 when the DDZO zoned the area D–2 for single

family residential use. *Id.* In 1985 the owners renovated the structure to create three apartments. The owners contended, much like Ragucci, that the addition of the third apartment did not "change[ ] the character of the use as rental apartments[.]" *Id.* at 1287. The Court of Appeals rejected this argument and held that the addition of a third apartment was an impermissible expansion of the nonconforming use.

ble as a five-unit dwelling, there has been no denial of "all economically beneficial or productive use of the land." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). Accordingly, the DDZO as applied to the Hatherleigh falls into neither category of these per se takings.

### 1. *Legitimate state interest*

 In addition to the two categories described above, the Fifth Amendment is violated when a land-use regulation "does not substantially advance legitimate state interests[.]" *Id.* at 1016, 112 S.Ct. 2886 (quoting *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980)). The purpose of the DDZO—and indeed of most zoning ordinances—is to secure convenience of access, lessen or avoid congestion in public ways, promote comfort and convenience, and secure the responsible development and growth of the county. *See* DDZO, preamble (1989). Density of permissible residential use is a well-established criterion and a legitimate subject of regulation. *See, e.g., Agins v. City of Tiburon*, 447 U.S. at 257, 100 S.Ct. 2138 (density restrictions limited the development of a five-acre tract of land to a maximum of five single-family residences); *Village of Belle Terre v. Boraas*, 416 U.S. 1, 9, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974) ("[a] quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs"). The neighborhood in which the Hatherleigh is located was zoned for single- or two-family use. The DDZO prohibits building a multi-unit apartment building in that area or expanding a conforming single- or two-family building into a multi-unit apartment. The U.S. Supreme Court has found a legitimate state interest in even stricter residential zoning restrictions. *See, e.g., Agins*, 447 U.S. at 257, 100 S.Ct. 2138; *Euclid*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926) (vacant land allegedly being held for industrial development was zoned for residential use). Just as Marion County has a legitimate interest in zoning its neighborhoods for certain types of uses and prohibiting the creation of multi-family buildings in some parts of the county, it also has a legiti-

mate interest in prohibiting any expansion of existing nonconforming buildings in those same areas. *See, e.g., Berkey*, 607 N.E.2d at 732 (the purpose of zoning ordinances is to secure the gradual or eventual elimination of nonconforming uses and to restrict, rather than increase, such uses). The DDZO substantially advances this interest by prohibiting landowners from expanding a nonconforming use in one part of their building into parts of the building that were previously not devoted to the nonconforming use or subdividing existing nonconforming apartments into a greater number of nonconforming units.

### 2. *Economic considerations*

 Because the DDZO substantially advances a legitimate state interest, Ragucci's challenge stands or falls based on a general takings analysis. Three factors are of "particular significance" to this ad hoc inquiry: (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). "[D]ecisions sustaining other land use regulations ... reasonably related to the promotion of the general welfare, uniformly reject the proposition that diminution in property value, standing alone, can establish a 'taking.'" *Id.* at 131, 98 S.Ct. 2646 (citations omitted). "The 'taking' issue in these contexts is resolved by focusing on the uses the regulations permit." *Id.* Disallowing the use of the Hatherleigh as an eight-unit apartment building may reduce the monthly rental income Ragucci receives and may reduce the building's resale value. Nevertheless, the property retains a significant part of its value as a five-unit apartment building and all of its pre–1966 value. The record does not support a quantification of the relative value of Ragucci's property as an eight or five unit structure. Surely, whatever the difference, it pales in comparison to other cases in which the Supreme Court has nonetheless found no taking. *See, e.g., Euclid*, 272 U.S. at 384, 47 S.Ct. 114 (75% diminution in value); *Hada-*

*check v. Sebastian,* 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915) (87½% diminution in value).

The DDZO may or may not have interfered with Ragucci's investment-backed expectations. Ragucci purchased the property in 1986, when the eight-unit Hatherleigh was being operated in violation of the DDZO. At the time he purchased the property, he obtained a vendor's affidavit, but apparently not a warranty, to the effect that the property was not in violation of any zoning ordinance. Although the 1966 DDZO was a matter of public record, what modifications, if any were made to the Hatherleigh between 1966 and 1986 may have been difficult for Ragucci to discover. Whether he anticipated the possibility of zoning difficulties is unknown from this record. We can only speculate whether the prospect that the building might be required to be reconverted into a fewer unit structure was factored into the price. However, any interference with his investment-backed expectations is mitigated, at least to some extent, by the possibility of recovery from a prior owner.[5] Moreover, the investment-backed expectations of Ragucci's predecessors are frustrated no more than a landowner who bought a piece of land expecting to develop it in a certain manner, only to later find the municipality enact a zoning ordinance that seriously restricts those plans. *See, e.g., Agins,* 447 U.S. at 257, 100 S.Ct. 2138; *Euclid,* 272 U.S. at 384, 47 S.Ct. 114; *see also Lucas,* 505 U.S. at 1027, 112 S.Ct. 2886 ("the property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers").

Finally, the character of the governmental action weighs against finding an unconstitutional taking. As the Court noted in *Penn Central,* a taking is more readily found when the governmental action is "characterized as a physical invasion," and less likely when the "interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." 438 U.S. at 124, 98 S.Ct. 2646. The DDZO clearly falls into the latter category. It does not single out the Hatherleigh, but rather applies to all nonconforming (and conforming) uses in the same zoned area. Under the federal constitution, the 1966 DDZO is not an unconstitutional taking as applied to the Hatherleigh.

## II. Disposition of the Case

### A. *Summary judgment*

Summary judgment is proper when "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). The facts of this case are not in dispute. Prior to the adoption of the DDZO in 1966, the Hatherleigh was comprised of five dwelling units. It has since been expanded into eight. Ragucci argued the absence of any genuine issue of material fact in his motion for summary judgment, and the Commission agreed in its cross-motion for summary judgment. The trial court's finding that the subdivision of two apartments into four and the creation of an additional apartment in the attic was a violation of the ordinance is legally correct for the reasons set forth in Part I of this opinion. Accordingly, the trial court properly granted summary judgment in favor of the Development Commission.

### B. *Injunctive relief*

■ As a final point, Ragucci argues that the relief granted by the trial court was vague, ambiguous, and more extensive than necessary. The trial court enjoined Ragucci from using the Hatherleigh as a dwelling of more than five units and ordered him to restore or remodel the building to a five-unit

---

5. Ragucci secured a vendor's affidavit from the previous owner, which provided that "[t]here are no existing violations of zoning ordinances or other restrictions applicable to the real estate." Based on this provision of the affidavit, Ragucci filed a third-party complaint against L.S. Metz, the prior owner of the Hatherleigh, alleging fraudulent misrepresentation, breach of warranty, and breach of contract. L.S. Metz had bought the property from Craig Fenneman, who owned the building at the time of the creation of the attic apartment. L.S. Metz filed a third party complaint against Fenneman, but has since assigned all of its claims against Fenneman to Ragucci.

dwelling.[6] Ragucci contends that requiring him to incur the cost and inconvenience of remodeling is excessive and that limiting his use to no more than five apartments is sufficient. The Commission counters that enjoining the occupancy of the Hatherleigh to no more than five units is not sufficient because the sixth, seventh, and eighth units are a violation of the DDZO and their removal is necessary to abate the continuing violation.

According to the DDZO, no "building, structure, premises or part thereof shall be *used or occupied* except in conformity with these regulations and for uses permitted by this ordinance." DDZO § 2.00(A)(1) (1966) (emphasis added). At least one Court of Appeals opinion suggests that requiring the restoration of the Hatherleigh to a five-unit dwelling would not be necessary to limit its use or occupancy to five units. *See Metropolitan Dev. Comm'n v. Goodman*, 588 N.E.2d 1281, 1287 (Ind.Ct.App.1992) (limiting the use of a remodeled carriage house to two rental units when its expansion into three units was impermissible under the DDZO). It appears clear enough that the third floor space may not be occupied in compliance with the DDZO. There is nothing in the record indicating whether the relief requested by the Commission is necessary to prevent an ongoing violation. Nor is there anything to support Ragucci's contention that an order preventing the "use" of two of the other units would be sufficient to bring the building into compliance or even precisely what such an order would mean. Injunctive relief is plainly appropriate in this case. *See Kosciusko County Bd. of Zoning Appeals v. Wygant*, 644 N.E.2d 112 (Ind.1994). However, we remand this case to the trial court to reconsider the proper scope of this relief, specifically whether it is necessary to order that the Hatherleigh be remodeled into a five-unit dwelling, rather than simply enjoining its use to five units.

### Conclusion

The trial court's grant of summary judgment in favor of the Development Commission is affirmed in part. This case is remanded to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.

---

**6.** The trial court's order found the terrace apartment (the fifth unit) in violation of the DDZO. Based on a 1996 amendment to the DDZO, the parties stipulated prior to the Court of Appeals decision that the terrace apartment is now recognized as a legally established nonconforming use. In light of the stipulation, the trial court's order granting summary judgment must be amended to allow Ragucci the continued use of the terrace apartment as a fifth unit.