**SOCIETY FOR PREVENTION OF CRUELTY TO ANIMALS AND HUMANE SOCIETY OF DELAWARE COUNTY, INC., Appellant–Defendant,**

v.

**CITY OF MUNCIE, Indiana, by Glenn SCROGGINS, Building Commissioner, Appellee–Plaintiff.**

No. 18A02–0201–CV–30.

Court of Appeals of Indiana.

June 11, 2002.

---

John G. Garman, Jr., Garman Law Offices, P.C., Anderson, IN, Attorney for Appellant.

Charles R. Clark, Beasley & Gilkison, LLP, Muncie, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

The Society for Prevention of Cruelty to Animals and Humane Society of Delaware County (collectively "SPCA") appeal the trial court's finding that they were in violation of the City of Muncie's ("City") zoning code. We affirm.

### Issue

The sole issue for our review is whether the trial court's determination that the SPCA was in violation of the zoning ordinance was erroneous.

### Facts

The parties submitted the following stipulation of the facts similar to the one filed with the trial court:

1. The City of Muncie, Indiana is a Municipal Corporation existing pursuant to the laws of Indiana and I.C. 34–4–1–1, *et seq.*

2. The Society For Prevention of Cruelty To Animals and Humane Society of Delaware County, Inc. is an Indiana Not for Profit Corporation, in good standing and existing under the laws of the State of Indiana.

3. On the 5th day of November, 1973 the City of Muncie, Indiana adopted the "City of Muncie Comprehensive Zoning Ordinance" for the regulation of land use inside the City pursuant to the provisions of I.C. 36–7–4–1, *et seq.* and I.C. 36–7–4–612.

4. At the time of the passage of the ordinance and continuing until the present time the Society For The Prevention of Cruelty To Animals and Humane Society of Delaware County, Inc. was and is the owner, in fee simple, of real estate located at 2100 South Penn Street, Muncie, Indiana . . .

\* \* \* \* \*

5. That when the area surrounding the real estate owned by the SPCA was rezoned "R–1 Residence Zone," the SPCA was lawfully using the real estate as an animal shelter.

6. As a result of the passage of the zoning ordinance and of the use of the property the real estate owned by the SPCA is a "valid nonconforming use" under the provisions of ARTICLE IX of the above cited ordinance.

7. At the time of the passage of the ordinance there was a building located on the real estate which was used for the housing of animals.

8. The SPCA is in possession of the real estate and has recently added wire holding pens and a gravel pad approximately 45 feet by 50 feet in size.

9. The holding pens are temporary holding pens, and the animals are not housed in the pens.

Appellant's Brief pp. 5–6 (appendix citations omitted).

On June 22, 2000, the City filed a verified complaint for Zoning Violation, Preliminary Injunction and Permanent Injunction against the SPCA alleging that the pad and pens violated the zoning ordinance. On November 2, 2001, the parties submitted the stipulation of facts to the trial court and conducted arguments. The trial court later entered an order granting the City's requests, which states in part:

[Findings]

8. That the "City of Muncie Comprehensive Zoning Ordinance," Article IX, Section 15, Nonconforming Uses and Structures, subparagraph C, Uses of Land, provides in pertinent part: A nonconforming use of land shall not be enlarged, expanded nor extended to occupy a larger area of land than was occupied at the time of the enact-

ment of the ordinance. A nonconforming use may be extended throughout any part of an existing structure that was arranged for such use prior to the enactment of this ordinance. Such use shall not be moved in whole or in part to another location on the lot or parcel of land other than that occupied by the use at the time of the enactment of this ordinance.

9. That at the time of the passage of the ordinance, there was a building located on the real estate which was used for the housing of animals.

10. That the SPCA is in possession of the real estate and has recently added temporary wire holding pens and a gravel pad approximately 45 feet by 50 feet in size.

\* \* \* \* \*

[Conclusions]

2. That at the time of the passage of the "City of Muncie Comprehensive Zoning Ordinance," there was located on the real estate, owned by the SPCA, a building used for the housing of animals. There is no evidence that any other structures existed on the real estate at the time of the passage of the ordinance.

3. That the addition of the pens, either temporary or permanent, and the gravel pad, is an expansion of the nonconforming use of the land.

4. That in construing the ordinance, the Court gives the words "their plain, ordinary, and usual meaning, unless a contrary purpose is shown by the ordinance," and it is clear from the language of the statute, the language prevails and will be given effect.

5. That the addition of the gravel pad and the pens by the SPCA had caused it to occupy a larger area of land than was occupied at the time of the passage of the ordinance. The gravel pad and the pens are a violation of Article IX, Section 15, Subparagraph C of the City of Muncie Comprehensive Zoning Ordinance.

6. That by adding the pad and the pens, the SPCA has moved the nonconforming use to another location on the real estate which was not occupied at the time of the passage of the ordinance, and, therefore, the gravel pad and pens are in violation of Article IX, Section 15, Subparagraph C of the City of Muncie Comprehensive Zoning Ordinance.

7. That the Court concludes that the pad and pens are not accessory uses/structure permitted by the Zoning Ordinance and are not consistent with the requirements of accessory uses and structures under the Code, nor are they incidental and commonly associated with the operation of the principal use of the lot.

App. pp. 6–10. The SPCA now appeals.

## Analysis

At the outset, we note that we generally review actions to enjoin zoning violations for an abuse of the trial court's discretion. *See, e.g., Metropolitan Dev. Comm'n v. Hair,* 505 N.E.2d 116, 117 (Ind. Ct.App.1987). In cases where the trial court enters findings and conclusions in support of the judgment, the standard is two tiered. *See, e.g., Metropolitan Dev. Comm'n v. Schroeder,* 727 N.E.2d 742, 748 (Ind.Ct.App.2000). We first determine whether the evidence supports the findings and then whether the findings support the judgment. *Id.* However, as both the SPCA and the City acknowledge, the standard of review in this case is different because of the stipulation of facts, which

included attached exhibits, submitted by the parties below. The parties ·did not submit additional evidence, so the trial court's decision was based entirely upon the stipulation. Where the decision is based upon entirely upon documentation or a stipulation by the parties, this court is in as good a position as the trial court to determine its force and effect. *Williamson v. Rutana,* 736 N.E.2d 1247, 1249 (Ind. Ct.App.2000); *see also Fratus v. Marion Community Schools Bd. of Trustees,* 749 N.E.2d 40, 43 (Ind.2001). Thus, this court's review of the trial court's decision is de novo. *Williamson,* 736 N.E.2d at 1249.

Our supreme court has stated:

The ultimate purpose of zoning ordinances is to confine certain classes of uses and structures to designated areas. Because nonconforming uses by definition detract from the fulfillment of that purpose, zoning ordinances properly seek to restrain them. In light of this important purpose, Indiana courts have refused to permit the expansion of or changes in nonconforming uses in a variety of factual situations. *See, e.g., Stuckman v. Kosciusko County Bd. of Zoning Appeals,* 506 N.E.2d 1079 (Ind. 1987) (nonconforming automobile graveyard existing on lots E–K could not be expanded on to lots A–D); *Berkey,* 607 N.E.2d at 732 (nonconforming junkyard could not be expanded beyond the land being so used at the time the restrictive ordinance was adopted); *Metropolitan Dev. Comm'n v. Goodman,* 588 N.E.2d 1281 (Ind.Ct.App.1992) (nonconforming two-unit carriage house apartment building could not be expanded into three units); *Taylor v. Metropolitan Dev. Comm'n,* 436 N.E.2d 1157 (Ind.Ct. App.1982) (nonconforming use of building as a package liquor store did not authorize the change of its use to a tavern); *Chizum v. Elkhart County Plan Comm'n,* 147 Ind.App. 691, 263 N.E.2d 654 (1970) (poles and lights for night racing could not be erected at nonconforming daytime drag racing track); *O'Banion v. State ex rel. Shively,* 146 Ind.App. 223, 253 N.E.2d 739 (1969) (nonconforming sale of beer did not justify use of property for the sale of any other alcoholic beverage).

*Ragucci v. Metropolitan Dev. Comm'n,* 702 N.E.2d 677, 679 (Ind.1998) (some citations omitted).

■ The use of land, or buildings, may be protected from existing zoning restrictions if the use is one, which existed and was lawful when the restriction became effective and which continued to exist since that time. *Metropolitan Dev. Comm'n v. Goodman,* 588 N.E.2d 1281, 1285 (Ind.Ct.App.1992). A "nonconforming use" is a use of property which lawfully existed prior to the enactment of a zoning ordinance, and which is allowed to continue after the effective date of the ordinance even though it does not comply with the applicable use restrictions. *Metropolitan Dev. Comm'n v. Schroeder,* 727 N.E.2d 742, 750 (Ind.Ct.App.2000). The parties agree that when the zoning ordinance went into effect in 1973, the animal shelter became a "valid nonconforming use" pursuant to Article IX of the ordinance. The question before us today is whether the addition of the gravel pad and the pens constituted an expansion of the nonconforming use that is proscribed by the ordinance.

Article IX, Section 15(C) of the zoning ordinance provides:

A nonconforming use of land shall not be enlarged, expanded nor extended to occupy a larger area of land than was occupied at the time of the enactment of the ordinance. A nonconforming use may be extended throughout any part of

an existing structure that was arranged for such use prior to the enactment of this ordinance. Such use shall not be moved in whole or in part to another location on the lot or parcel of land other than that occupied by the use at the time of the enactment of this ordinance.

The SPCA first argues:

That the entire use of the land by the SPCA is within the same lot as occupied prior to the enactment of the zoning ordinance, and that there existed until around 1997 a petting zoo on the back of the lot. Consequently, even with the addition of the gravel pad and pens, the use of the real estate owned by the SPCA is a "valid-nonconforming use" under the provisions of ARTICLE IX of the City's zoning code.

Appellant's Br. pp. 8–9. The SPCA further argues that Section 15(C) allows it to use the entire lot, and to continue their use in the same manner as the lot had been used at the time the ordinance was enacted.

■ We agree with the City that the SPCA appears to assert that "because the real estate was being used as an animal shelter at the time of the passage of the ordinance it may therefore add the pad and pens because it has not changed the use of the real estate." Appellee's Br. p. 7. Section 15(C) definitively quashes this theory. That section is designed to restrict the expansion of nonconforming *uses*. The original nonconforming use was the animal shelter building existing at the time the ordinance went into effect. However, any change to or expansion of that original nonconforming use must comply with the restrictions set forth in Section 15(C). The SPCA's contention that it is entitled to use the entire lot as long as it is part of the same use, namely an animal shelter, flies in the face of the specific language of Section 15(C). The interpretation of ordi-

nances that restrict the expansion of nonconforming uses turns in the first instance on the specific language of the relevant ordinance, giving its words their plain, ordinary, and usual meaning. *Ragucci v. Metropolitan Dev. Comm'n*, 702 N.E.2d 677, 678 (Ind.1998).

■ Next, the SPCA argues that the gravel pad and pens are consistent with the requirements of accessory uses and structures under the zoning ordinance. The SPCA opines that Article IX Section 14 of the ordinance contains "Definitions" of accessory uses/structure that shall be permitted in all zones. This section provides in part:

1. GENERAL DEFINITION—Accessory uses/structures shall be permitted in all zones in accordance with the provisions of this section. Accessory uses/structures:

a. Shall be incidental and commonly associated with the operation of the principal use of the lot.

\* \* \* \* \*

Such appurtenant features as walks, driveways, curbs, drainage installations, mailboxes, lamp posts, bird baths, fences, walls, uncovered patios, outdoor fireplaces, *dog houses*, tree houses, playground apparatus, waterfalls, or permanent landscaping shall be considered incidental uses/structures and not as accessory uses/structures subject to the provisions herein.

Article IX, Sec. 14(A) (emphasis added). The SPCA maintains that the pad and pens are incidental and commonly associated with the operation of the principal use of the lot, namely an animal shelter. In addition, the SPCA relies upon the inclusion of "dog houses" in the list of incidental uses.

First, the pad and pens at issue here can clearly not be characterized as "dog houses" within the meaning of Section 14. The items listed in that section are small items typically found on property with a private residence, i.e. a mailbox, play equipment, and a bird bath. The items contained in the list do not include large structures. A gravel pad and forty-five by fifty foot pen divided into forty-two units enclosed by wire fencing could hardly be said to be a small structure typically found on a private residence. We are not satisfied that the reference to "dog houses" includes structures such as the one here. Second, although the pad and pens are commonly associated with the operation of the principal use of the lot, an animal shelter, they are not incidental. The structure is large and conspicuous.

The SPCA must still comply with the requirements set forth in Article IX, Section 15(C), which prohibits the enlargement, expansion, or extension of a nonconforming use. The SPCA claims it has not expanded its use of the real estate. In support of its argument, the SPCA relies upon two cases, *Berkey v. Kosciusko Co.*, 607 N.E.2d 730 (Ind.Ct.App.1993), and *Stuckman v. Kosciusko Co.*, 506 N.E.2d 1079 (Ind.1987). In *Berkey*, Berkey owned a piece of real estate where a junkyard was located, which was a valid nonconforming use. Berkey expanded the junkyard on the property. The relevant section of the ordinance provided, "A nonconforming use may be continued, but may not be extended, expanded or changed...." *Berkey*, 607 N.E.2d at 732. Berkey argued that because he had not gone beyond the borders of the real estate that constituted the nonconforming use, he was exempt because of the portion of the ordinance that provided, "A nonconforming use which occupies a portion of a structure or premises may be extended within such structure or premises as they

exist when the prohibitory provision took effect, but not in violation of the area and yard requirements of the district in which such structure or premises are located." *Id.* at 732. We affirmed the trial court's finding of an unlawful expansion of the nonconforming use, reasoning:

> The ultimate purpose of zoning ordinances is to confine certain classes of uses and structures to certain areas. Nonconforming uses are not generally favored since they detract from the attainment of that purpose; therefore, the policy of zoning ordinances is to secure the gradual or eventual elimination of nonconforming uses to restrict or diminish, rather than increase, such uses.

*Id.*

In *Stuckman*, the Stuckmans owned lots A through K of a subdivision. At the time of the passage of the zoning ordinance, they operated an automobile graveyard on lots E through K. The ordinance zoned all of the parcel lots as residential and prohibited an extension, expansion, or change unless to a conforming use. The Stuckmans eventually placed automobiles on lots A through D, causing the trial court to issue an injunction barring them from operating a nonconforming use on all of the property. Our supreme court reversed the trial court in part, allowing the activity on lots E through K but barring it on lots A through D. *Stuckman*, 506 N.E.2d at 1081. The court reasoned that the "Stuckmans have not merely increased the inventory of junk cars on lots A–D; they have moved an existing, operating automobile graveyard from lots E–K to lots A–D. Doing so was a violation of the zoning ordinance." *Id.*

Both of these cases are instructive. In both cases, landowners who were operating valid nonconforming uses on their property were prevented from expanding

those uses into other areas of the property. Here, the SPCA constructed a large gravel pad and wire pens that were not part of the original building that had been deemed a valid nonconforming use. Just as in *Berkey* and *Stuckman*, the expansion here was not a permanent structure, such as a building, but was still a structure designed to expand the original use of the building, the operation of the animal shelter. Indeed, the pens were erected to house, even if temporarily, the animals. Such was the case in *Berkey* and *Stuckman*, where the junkyards were spread out onto additional parts of the real estate.

Section 15(C) specifically precludes this type of extension of the original nonconforming use. It provides that a "nonconforming use of land shall not be *enlarged, expanded nor extended to occupy a larger area of land than was occupied at the time of the enactment of the ordinance.*" This is precisely what the pad and the pens did—they occupied a larger area of the land than was occupied at the time of the ordinance's enactment. The section further provides, "Such [nonconforming] use shall not be moved in whole or in part to another location on the lot or parcel of land other than that occupied by the use at the time of the enactment of this ordinance." The animal shelter was moved, in part, to another location on the lot when the pad and the pens were erected. Therefore, their construction constituted a violation of this section of the zoning ordinance.

### Conclusion

We reach the same conclusion as that reached by the trial court, namely that the pad and pens erected by the SPCA violate the zoning ordinance with respect to nonconforming uses. They enlarge and expand the nonconforming use on the property, which is specifically proscribed by the ordinance. We affirm.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.