**FOR PUBLICATION**



FILED
Sep 19 2014, 10:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LIBERTY L. ROBERTS**
Church Church Hittle & Antrim
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE,
Indiana Association of Cities and Towns and
Indiana Municipal Lawyers Association:

**DAVID E. BAILEY**
**PATRICK L. PROCTOR**
Eilbacher Fletcher, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**EDWARD J. MERCHANT**
**JOHN A HENRY**
Ruckelshaus Kautzman Blackwell Bemis
     & Hasbrook
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CITY OF MITCHELL, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 47A01-1402-PL-88 |
| | ) | |
| RANDY PHELIX, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE LAWRENCE CIRCUIT COURT
The Honorable E. Michael Hoff, Special Judge
Cause No. 47C01-1210-PL-1651

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

The City of Mitchell ("the City") appeals the trial court's denial of its complaint for declaratory judgment related to Randy Phelix's claim for medical expenses. The Indiana Association of Cities and Towns and the Indiana Municipal Lawyers Association filed an amici curiae brief in support of the City. We reverse.

## Issues

The City raises two issues, which we revise and restate as whether the trial court properly found that the City was required to pay Phelix's medical expenses under Indiana Code Section 36-8-4-5.

## Facts

Phelix was employed as a police officer for the City from November 1997 through March 2008. During his employment, Phelix dismantled methamphetamine labs as part of his duties. At some point, Phelix was diagnosed with diabetes, peripheral neuropathy, systolic hypertension, and renal disease. In March 2008, Phelix advised the City that he was unable to perform his duties as a result of his health conditions, and he requested disability benefits from the Public Employees' Retirement Fund ("PERF")[1] pursuant to

---

[1] PERF is now known as the Indiana Public Retirement System ("INPRS").

Indiana Code Section 36-8-8-12. The City's pension board conducted a hearing on Phelix's request and found that "Phelix was suffering from an occupational disease as that term was defined in I.C. § 36-8-8-12.5(b)(1)(C)" and that "Phelix had a Class 1 impairment as defined by I.C. § 36-8-8-12.5(b)(1)(C)."[2] App. p. 37. The pension board's findings were sent to PERF for review. On June 2, 2008, PERF disagreed with the City's pension board. PERF found that Phelix had a Class 3 impairment with a 20% degree of disability.[3] Phelix appealed PERF's determination that his disability, neuropathy, was a Class 3 disability and that he had a 20% degree of impairment. Phelix maintained that "his disability was a Class 1 impairment because it was the result of his unprotected

_____

[2] A Class 1 impairment is:

> a covered impairment that is the direct result of one (1) or more of the following:
>
> (A)     A personal injury that occurs while the fund member is on duty.
>
> (B)     A personal injury that occurs while the fund member is off duty and is responding to:
>
>> (i)     an offense or a reported offense, in the case of a police officer; or
>>
>> (ii)    an emergency or reported emergency for which the fund member is trained, in the case of a firefighter.
>
> (C)     An occupational disease (as defined in IC 22-3-7-10). A covered impairment that is included within this clause and subdivision (2) shall be considered a Class 1 impairment.
>
> (D)     A health condition caused by an exposure risk disease that results in a presumption of disability or death incurred in the line of duty under IC 5-10-13.

Ind. Code § 36-8-8-12.5(b)(1).

[3] "A Class 3 impairment is a covered impairment that is not a Class 1 impairment or a Class 2 impairment." I.C. § 36-8-8-12.5(b)(3).

3

exposure to chemicals while dismantling methamphetamine labs as part of his law enforcement duties." Id. PERF's medical director, Dr. Omkar Markland, determined that Phelix's neuropathy was "caused at least in part by his diabetes, thus making it a Class 3 impairment, not a Class 1 impairment." Id. PERF referred Phelix to Dr. Brent Furbee, who concluded that "Phelix certainly described sensorimotor abnormalities of his distal extremities that could be consistent with peripheral polyneuropathy." Id. at 38. On December 1, 2008, PERF issued an amended determination, finding that Phelix had a Class 2 impairment with a 20% disability.[4] Phelix did not appeal that determination.

---

[4] A Class 2 impairment is:

> a covered impairment that is:
>
> (A)    a duty related disease. A duty related disease means a disease arising out of the fund member's employment. A disease shall be considered to arise out of the fund member's employment if it is apparent to the rational mind, upon consideration of all of the circumstances, that:
>
>> (i)    there is a connection between the conditions under which the fund member's duties are performed and the disease;
>>
>> (ii)    the disease can be seen to have followed as a natural incident of the fund member's duties as a result of the exposure occasioned by the nature of the fund member's duties; and
>>
>> (iii)    the disease can be traced to the fund member's employment as the proximate cause; or
>
> (B)    a health condition caused by:
>
>> (i)    an exposure related heart or lung disease;
>>
>> (ii)    an exposure related cancer; or
>>
>> (iii)    exposure related Parkinson's disease;

4

In January 2009, Phelix asked the City to pay his medical expenses pursuant to Indiana Code Section 36-8-4-5. The City directed Phelix to file a claim with the City's worker's compensation carrier. In the claim, Phelix alleged that "he had suffered a work related injury from exposure to chemicals used in manufacturing methamphetamine" and that "the exposure caused him to have diabetes and tingling in his hands and feet." Id. at 39. The worker's compensation carrier obtained medical records and had Phelix evaluated by a neurologist. The neurologist issued a report stating that "it was 'impossible to determine' whether the neuropathy Phelix complained of was caused by diabetes or toxic exposure." Id. at 40. On January 21, 2010, the carrier denied Phelix's claim for worker's compensation benefits on the grounds that the "[c]laim did not occur in [the] course and scope of [Phelix's] employment." Id. Phelix did not challenge the denial of his worker's compensation claim by making an application to the worker's compensation board. See Ind. Code § 22-3-4-5.

Phelix continued to request payment of his medical expenses pursuant to Indiana Code Section 36-8-4-5. On October 24, 2012, the City filed a complaint for declaratory judgment regarding Phelix's claim for payment of his medical expenses. The City requested that the trial court declare it had no "duty or obligation under I.C. § 36-8-4-5 to pay Phelix's medical expenses." App. p. 15. The parties filed a stipulation of facts and

---

that results in a presumption of disability incurred in the line of duty under IC 5-10-15.

I.C. § 36-8-8-12.5(b)(2).

evidence and submitted memorandums in support of their positions.[5]  After a hearing, the

trial court denied the City's complaint for declaratory judgment.  The trial court found:

> 17.  The court concludes that Ind. Code § 22-3-2-2 limits an injured or ill police officer to receiving the type of medical services that are typically provided under worker's compensation policies.  Also, that statute makes it clear that a police officer may not recover twice for the same bill.  The statute also makes it clear that the liability of a governmental unit to pay for the cost of care for injury or illness a police officer has contracted in the performance of the officer's duty does not end with the purchase of a worker's compensation policy.  If insurance coverage ends for any reason the governmental unit is obliged to provide medical benefits that are necessary until the police officer or firefighter is no longer in need of medical care.
>
> 18.  The issue of whether or not Randal Phelix has a disease arising out of his employment as a City of Mitchell police officer that is a covered Class 2 impairment, with a 20% disability, was decided by PERF, the agency authorized by Indiana law to make that decision.  Defendant's application for worker's compensation coverage, as instructed by the City's Attorney, did not change that determination or waive Defendant's right to payment of charges for his medical care as set out in Ind. Code § 36-8-4-5(a).
>
> 19.  Since the City has a worker's compensation policy, Defendant is limited to receiving the type of medical services that are provided by that policy.  However, the administrators of that worker's compensation policy do not have the authority to decide whether or not Randal Phelix has a disease arising out of his employment as a City of Mitchell police officer that is a covered Class 2 impairment, or that he has a 20% disability, as PERF already decided those issues.

---

[5] Phelix also submitted various documents with his memorandum.  However, the City filed objections to the admission of those documents, and the trial court sustained the City's objections.

20. The court finds that the City has a clear obligation under Ind. Code § 36-8-4-5 to pay Mr. Phelix's medical expenses. Purchasing a worker's compensation policy did not end that obligation, although so long as the policy is paying Mr. Phelix's medical expenses the City is not required to pay anything from the City's general revenue. If the City's worker's compensation policy stops paying Mr. Phelix's medical expenses related to his duty related disease, the City of Mitchell is obligated by Ind. Code § 36-8-4-5 to pay those medical expenses.

IT IS THEREFORE ORDERED that the City of Mitchell's request for the entry of a judgment declaring that it has no duty or obligation under Ind. Code § 36-8-4-5 to pay Randal Phelix's medical expenses is denied. Judgment is entered in favor of Defendant Randal Phelix on Plaintiff's Complaint.

App. pp. 100-01. The City now appeals.

**Analysis**

The trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. Menard, Inc. v. Dage–MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000). In general, we first consider whether the evidence supports the factual findings and then consider whether the findings support the judgment. Id. Here, the parties stipulated to the relevant facts. "Where, as here, the decision is based entirely upon documentation or a stipulation by the parties, we are in as good a position as the trial court 'to determine its force and effect.'" Gillespie v. GEICO Gen. Ins. Co., 850 N.E.2d 913, 916 (Ind. Ct. App. 2006) (quoting Soc'y for Prevention of Cruelty to Animals and Humane Soc'y of

7

Delaware County, Inc. v. City of Muncie ex rel. Scroggins, 769 N.E.2d 669, 673 (Ind. Ct. App. 2002)). Accordingly, we apply a de novo standard of review. Id.

The City argues that the trial court's finding that it must pay Phelix's medical expenses under Indiana Code Section 36-8-4-5 is clearly erroneous. This issue requires us to interpret several interrelated statutes. In interpreting statutes, we seek to give effect to the intent of the legislature. F.D. v. Indiana Dep't of Child Servs., 1 N.E.3d 131, 136 (Ind. 2013). We look first to the statutory language, and we presume that the words of an enactment were selected and employed to express their common and ordinary meanings. Id. "Where the statute is unambiguous, the Court will read each word and phrase in this plain, ordinary, and usual sense, without having to resort to rules of construction to decipher meanings." Id. Clear and unambiguous statutes leave no room for judicial construction, but when a statute is susceptible to more than one interpretation, it is deemed ambiguous and is thus open to judicial construction. Ballard v. Lewis, 8 N.E.3d 190, 194 (Ind. 2014). "Where there is ambiguity, courts resort to the rules of statutory construction so as to give effect to the General Assembly's intent." Id.

The trial court found that the City was required to pay Phelix's medical expenses pursuant to Indiana Code Section 36-8-4-5, which concerns a city's duty to care for police officers that have suffered a line of duty injury, and Indiana Code Section 22-3-2-2, which is part of the Worker's Compensation Act ("WCA"). Indiana Code Section 36-8-4-5 provides:

> (a)  A city shall pay for the care of a police officer or firefighter who suffers an injury while performing the person's duty or contracts illness caused by the

8

performance of the person's duty, including an injury or illness that results in a disability or death presumed incurred in the line of duty under IC 5-10-13. This care includes:

    (1)    medical and surgical care;

    (2)    medicines and laboratory, curative, and palliative agents and means;

    (3)    X-ray, diagnostic, and therapeutic service, including during the recovery period; and

    (4)    hospital and special nursing care if the physician or surgeon in charge considers it necessary for proper recovery.

(b)    Expenditures required by subsection (a) shall be paid from the general fund of the city.

(c)    A city that has paid for the care of a police officer or firefighter under subsection (a) has a cause of action for reimbursement of the amount paid under subsection (a) against any third party against whom the police officer or firefighter has a cause of action for an injury sustained because of or an illness caused by the third party. The city's cause of action under this subsection is in addition to, and not in lieu of, the cause of action of the police officer or firefighter against the third party.

Indiana Code Section 22-3-2-2 provides, in part:

(c)    IC 22-3-2 through IC 22-3-6 does not apply to employees of municipal corporations in Indiana who are members of:

    (1)    the fire department or police department of any such municipality; and

    (2)    a firefighters' pension fund or of a police officers' pension fund.

However, if the common council elects to purchase and procure worker's compensation insurance to insure said employees with respect to medical benefits

under IC 22-3-2 through IC 22-3-6, the medical provisions of IC 22-3-2 through IC 22-3-6 apply to members of the fire department or police department of any such municipal corporation who are also members of a firefighters' pension fund or a police officers' pension fund.

\* \* \* \* \*

(e)     When any municipal corporation purchases or procures worker's compensation insurance covering members of the fire department or police department who are also members of a firefighters' pension fund or a police officers' pension fund, and pays the premium or premiums for such insurance, the payment of such premiums is a legal and allowable expenditure of funds of any municipal corporation.

(f)     Except as provided in subsection (g), where the common council has procured worker's compensation insurance under this section, any member of such fire department or police department employed in the city carrying such worker's compensation insurance under this section is limited to recovery of medical and surgical care, medicines, laboratory, curative and palliative agents and means, x-ray, diagnostic and therapeutic services to the extent that such services are provided for in the worker's compensation policy procured by such city, and shall not also recover in addition to that policy for such same benefits provided in IC 36-8-4.

(g)     If the medical benefits provided under a worker's compensation policy procured by the common council terminate for any reason before the police officer or firefighter is fully recovered, the common council shall provide medical benefits that are necessary until the police officer or firefighter is no longer in need of medical care.

The interplay between these two statutes is a matter of first impression.[6]

[6] There seems to have been some confusion regarding the applicability of Indiana Code Chapter 22-3-2, which is the WCA, or Indiana Code Chapter 22-3-7, which is the Worker's Occupational Diseases Compensation Act. Before the trial court, Phelix argued that the Worker's Occupational Diseases Compensation Act applied to his claim, not the WCA. The City responded that the worker's compensation policy covered both injuries and diseases and that the carrier denied Phelix's claim because his medical condition was not related to his employment, not because it was a disease rather than an injury. The trial court applied the WCA.

     On appeal, the City notes that the relevant provisions of both statutes are the same or substantially similar. See Appellant's Br. p. 2 n.1. Much of the language of the Worker's Occupational Diseases Compensation Act tracks that of the WCA. See Baker v. Westinghouse Elec. Corp., 637 N.E.2d 1271, 1276 (Ind. 1994). For example, Indiana Code Section 22-3-7-2 provides:

> (a)     Every employer and every employee, except as stated in this chapter, shall comply with this chapter, requiring the employer and employee to pay and accept compensation for disablement or death by occupational disease arising out of and in the course of the employment, and shall be bound thereby. The burden of proof is on the employee. The proof by the employee of an element of a claim does not create a presumption in favor of the employee with regard to another element of the claim.
>
>                 * * * * *
>
> (c)     This chapter does not apply to employees of municipal corporations in Indiana who are members of:
>
> > (1)     the fire department or police department of any such municipality; and
> >
> > (2)     a firefighters' pension fund or a police officers' pension fund.
>
>     However, if the common council elects to purchase and procure worker's occupational disease insurance to insure said employees with respect to medical benefits under this chapter, the medical provisions apply to members of the fire department or police department of any such municipal corporation who are also members of a firefighters' pension fund or a police officers' pension fund.
>
> (d)     When any municipal corporation purchases or procures worker's occupational disease insurance covering members of the fire department or police department who are also members of a firefighters' pension fund or a police officers' pension fund and pays the premium or premiums for the insurance, the payment of the premiums is a legal and allowable expenditure of funds of any municipal corporation.

The City and amici curiae argue that, under these two statutes, if a city procures a worker's compensation policy covering the police department, an injured officer must look to recovery under the WCA first, not Indiana Code Section 36-8-4-5. In support of this argument, the City and amici curiae rely on the language of the Indiana Code Section 22-3-2-2(f), which expressly limits an injured officer under these circumstances "to recovery of medical . . . care . . . to the extent that such services are provided for in the worker's compensation policy procured by such city, and shall not also recover in addition to that policy for such same benefits provided in IC 36-8-4." They also rely on Elwell v. City of Michigan City, 179 Ind. App. 434, 385 N.E.2d 1203 (1979).[7]  In

_____

(e)    Except as provided in subsection (f), where the common council has procured worker's occupational disease insurance as provided under this section, any member of the fire department or police department employed in the city carrying the worker's occupational disease insurance under this section is limited to recovery of medical and surgical care, medicines, laboratory, curative and palliative agents and means, x-ray, diagnostic and therapeutic services to the extent that the services are provided for in the worker's occupational disease policy so procured by the city, and may not also recover in addition to that policy for the same benefits provided in IC 36-8-4.

(f)    If the medical benefits provided under a worker's occupational disease policy procured by the common council terminate for any reason before the police officer or firefighter is fully recovered, the common council shall provide medical benefits that are necessary until the police officer or firefighter is no longer in need of medical care.

Indiana Code Section 22-3-7-2 is substantially similar to Indiana Code Section 22-3-2-2.  Further, the worker's compensation board has jurisdiction over claims covered by Indiana Code Chapter 22-3-7.  I.C. § 22-3-7-23.  Consequently, although it may have been more appropriate to cite Indiana Code Chapter 22-3-7 in this appeal, the result is the same and, for simplicity, we will refer to the statutes of the WCA.

[7] Elwell did not concern the relationship between Indiana Code Section 36-8-4-5 and Indiana Code Section 22-3-2-2.  Rather, in Elwell, a police officer injured in the line of duty brought an action against his employer, a city, for negligence related to maintenance of a sewer drain cover.  The city argued that

discussing the predecessor to Indiana Code Section 22-3-2-2(f), we opined that "the clear import of this proviso is to limit the medical benefits payable to exempt officers to those provided by the compensation act when the city has elected to purchase such insurance." Elwell, 179 Ind. App. at 437-38, 385 N.E.2d at 1204. The language of the statute indicates that Phelix is limited to the benefits provided under the City's worker's compensation policy for medical expenses related to line of duty injuries. Phelix cannot first look to recover his medical expenses under Indiana Code Section 36-8-4-5.

Phelix acknowledges that, under Indiana Code Section 22-3-2-2, a city is permitted to bring police officers within the purview of the WCA if it elects to purchase worker's compensation insurance.[8] However, Phelix argues that his case falls under the exception of Indiana Code Section 22-3-2-2(g).[9] That subsection requires the City to pay an officer's medical benefits until the officer "is no longer in need of medical care" if the officer's medical benefits under the worker's compensation policy "terminate for any reason before the police officer . . . is fully recovered." I.C. § 22-3-2-2(g). Phelix argues that his benefits under the worker's compensation policy were "denied and were therefore

the officer's exclusive remedy was provided by the WCA. Ultimately, we concluded that the officer's action was not precluded by the WCA, but the city's liability for medical payments was limited to those provided under the WCA. Although the circumstances in Elwell are much different than those here, we agree with Elwell's interpretation of the predecessor to Indiana Code Section 22-3-2-2(f).

[8] In his Appellee's Brief, Phelix relies on Fort Wayne Patrolmen's Benev. Ass'n, Inc. v. City of Fort Wayne, 903 N.E.2d 493 (Ind. Ct. App. 2009), trans. denied. However, the parties in that case conceded that the WCA did not apply to the situation and that the officer was not covered by the WCA. Here, the City elected to provide worker's compensation insurance under Indiana Code Section 22-3-2-2. Consequently, Fort Wayne Patrolmen's Benev. Ass'n is distinguishable.

[9] Phelix also repeatedly contends that the City failed to timely submit of notice of injury to the worker's compensation carrier. However, Phelix's claim was not denied on this basis, and it is unclear how he was harmed by this alleged failure.

13

terminated before he was fully recovered." Appellee's Br. p. 12. According to Phelix, the statutes "obligate the City to provide medical care to Mr. Phelix, regardless of the availability and denial" by the worker's compensation carrier. Id. at 12-13.

We disagree with Phelix's interpretation. Once the City elected to utilize worker's compensation under Indiana Code Section 22-3-2-2, Phelix was obligated to seek payment of his medical expenses under the WCA process. Phelix started the process but did not further pursue benefits after the worker's compensation carrier denied his claim. Although he had the opportunity to do so, Phelix did not challenge the initial determination of the worker's compensation carrier. The WCA sets forth the exclusive procedures for determining a claimant's rights to worker's compensation benefits. See I.C. § 22-3-2-6. By failing to challenge the determination pursuant to the WCA, Phelix failed to exhaust his administrative remedies and waived his right to dispute the worker's compensation carrier's determination. The plain and unambiguous language of Indiana Code Section 22-3-2-2(g) only requires the City to pay Phelix's medical expenses under these circumstances if his worker's compensation benefits are "terminated." Terminated means "to bring to an end or halt." THE AMERICAN HERITAGE COLLEGE DICTIONARY 1399 (3rd ed. 2000). The benefits cannot end if they never started; Phelix's worker's compensation benefits were not "terminated" because they never started. Consequently, the exception found in Indiana Code Section 22-3-2-2(g) does not apply.

We recognize the inconsistency here—PERF apparently determined that Phelix's medical condition was at least in part a result of his employment, but the worker's compensation carrier determined that his medical condition was not related to his

14

employment. However, that inconsistency would have been better addressed by Phelix exhausting his administrative remedies in the worker's compensation proceedings. Where the statutes are unambiguous, as here, we are constrained to apply the statutes as written. The trial court erred when it concluded that Phelix was entitled to have the City pay his medical bills under Indiana Code Section 36-8-4-5 despite the worker's compensation carrier's denial of his claim.[10]

**Conclusion**

The trial court erred when it determined that the City was required to pay Phelix's medical expenses under Indiana Code Section 36-8-4-5. We reverse.

Reversed.

FRIEDLANDER, J., and MATHIAS, J., concur.

---

[10] The City also argues that the trial court erred when it determined that the worker's compensation carrier was bound by PERF's decision. Because we conclude that the trial court erred in interpreting the statutes, we need not address this argument.